Opinion by
 

 Dithrich, J.,
 

 This is an action in assumpsit brought to recover the difference in pay between what plaintiff received for his military service in World War II and what he would have received had he continued to work for defendant.
 

 On October 1, 1940, the following article appeared in the Sharon Herald:
 

 “COCA-COLA FIRM TO PAY ALL DRAFTEES
 

 “The Coca-Cola Bottling Co., Inc. of Sharon today took a place among the outstanding patriotic firms of the Slienango Valley.
 

 “William Feinberg, Manager, announced that any employee called to the colors through the conscription 1 aw will not lose a cent in wages. The company is prepared to pay the difference between the government wages and the amount the employee received before he went to camp.
 

 “Feinberg said this ruling will protect every man employed by the company and the ‘pay while aAvay’ plan Avill be continued as long as the man is in service.
 

 “The announcement, made to employees today, gives them a more optimistic view on the approaching draft.
 
 *150
 
 If called, they will be able to leave with knowledge that dependents will continue to receive customary income as long as they are away.”
 

 Plaintiff testified that Feinberg, manager and secretary of the defendant, showed the article to him and tuvo of the three other employees liable to be conscripted, stating . . that he was going to take care of us when Ave went into the service, that he would pay the difference betAveen what we made at the Coca Cola Company and what the government paid us.”
 

 Plaintiff continued in defendant’s employ for two years. Then in October 1942, having received notice to report for his Selective Service physical examination, he enlisted in the Coast Guard and served with that branch some 37 months. He returned from the service and resumed Avorking for defendant in December 1945. In May 1947 he left the employ of defendant, and in September of that year first made demand for payment for those years during which he was in service. He said the reason for the delay Avas that since he had returned to the employ of defendant he was afraid that demand for the difference in pay during his absence in the service Avould imperil his job. His claim was for $3,588. Upon trial the jury awarded him $1,000. From the denial of motions for a new trial and for judgment n. o. v. defendant appeals.
 

 The questions involved, substantially as stated by appellant, are: 1. Was there any consideration for the alleged promise? 2. Did Feinberg have authority to bind the corporation? 3. Was a definite amount proved to be due? 4. Did the changes in the Selective Service Act between 1940 and 1942 affect the contract? We shall answer them in that order as did the learned court below.
 

 If the parties entered into a valid, informal contract, it is clear that it must be in the nature of a unilateral contract. That is to say, one Avhich on analysis
 
 *151
 
 will disclose the following elements, a promise made by the promisor to the promisee which is supported by a valid consideration.
 

 As the law is not concerned with the secret, inner workings of a party’s mind, the terms and conditions of the promise must be determined through reference to those outward manifestations properly in evidence. In this case we have the newspaper article quoted above and appellee’s testimony to the effect that Feinberg said he was going to take care of them when they went into the service. If the words are given their ordinary meaning in the light of surrounding circumstances, it appears that the promise made by appellant to appellee and the other employees was that they would be paid the difference between their normal civilian wages and their service pay during any period of military service undertaken pursuant to the national emergency. There seems to be no reason to infer that any distinction was intended between service required by the Selective Service Act and service which was initially voluntary.
 

 The next point which must be considered, and it is the most important one in the case, is whether there is a valid consideration for this promise. Restatement, Contracts, defines consideration as follows: “§75. (1) Consideration for a promise is (a) an act other than a promise, or (b) a forbearance . . . bargained for and given in exchange for the promise. (2) Consideration may be given to the promisor or to some other person. It may be given by the promisee or by some other person.”
 

 It was implicit in the terms of the promise that only those employees who remained with appellant until such time as they might enter military service would qualify for the promised compensation. The growth of war industries offering new and well-paid jobs is a proper subject of judicial notice in considering the period from 1940 to 1942. By remaining with appellant during that
 
 *152
 
 period relying on the promise of supplementary compensation during the time of military service, appellee was exercising a forbearance which of itself amounted to a legal consideration. It is well also to remember that, in addition to securing the benefits of better employee morale and loyalty, appellant by publicizing this promise to its employees was actively seeking the valuable good will of its customers and of the entire community. It may very well be supposed—without in the least impugning the motives of appellant in making the offer or of appellee in enlisting—that some part of the acts and forbearances mentioned was bargained for and given in exchange for the promise made.
 

 The diligence of counsel and our own research have failed to discover any decision of this or any sister state directly in point, but two English cases lend support to our position.
 

 In
 
 Davies v. Rhondda District Urban Council,
 
 87 Law Journal Reports, K. B. Div. 166, plaintiff was a teacher employed by the education committee of defendants, who, on September 4, 1914, passed the following resolution: “. . . all persons in the employ of the authority who have been or may be called out for active service during the present war be granted the necessary leave of absence for that period; that payment be made to them ... of their full civil pay, less a deduction on account of Navy or Army pay or allowance; . . .” Along with a copy of the resolution, a circular had been sent to the teachers: “I am pleased to inform you that the Authority . . . [has] decided to pay the salaries of those teachers who are serving or who may volunteer for service with H. M. Forces during the war . . .” On the faith of this plaintiff joined His Majesty’s Forces. The resolution was rescinded by a second resolution and that was followed by an Act of Parliament. Defense: no considera!ion and
 
 ultra vires.
 
 The Court said:
 

 
 *153
 
 Pickeord, L. J.: . On the faith of that circular the plaintiff joined the Army. The Military Service Act, 1916 (5 & 6 Geo. 5 c. 104), Avas not in operation at that time, and therefore he Avas not bound to join the Army; but he did join it on the faith of that resolution, and it will be noticed that in the letter in which the resolution is sent to him it Avas said to apply to teachers who are serving or may volunteer for service, and therefore it is obvious that it was never intended to apply simply to persons called up for active service in the sense of being reservists and liable to call, and not volunteers. . . . Upon that he joined. ... It seems to me that there Avas as clear a contract as you could haA7e, ...”
 

 Bankes, L. J.: “I agree. This appears to me to be a case in Avhich a local authority which has contracted in haste is noAV repenting in leisure, and I think that probably there are a great many local authorities and employers also in that position, because they made offers to their employees at the time of the outbreak of Avar which Avere accepted by the employees, and on the faith of Avhich they took up military service; and neither the local authority nor the employers realised or anticipated the course of events, and they found that they had incurred a very much greater liability than they had either anticipated or intended. But that is not the question that Ave have to consider. ... If the terms of the resolution or the accompanying letter had made it plain that it Avas not communicated to him in the form of an offer, Avhich he Avas at liberty to accept or not, as he pleased, but that it Avas communicated to him merely as an intimation that the local authority Avere, out of their good nature, going to make voluntary alloAvances to officers Avho entered His Majesty’s Forces—if that had been made plain on the face of it—it would not have been open to the plaintiff to say that it was communicated to him as an offer which he might or might not accept, as he pleased. Reading
 
 *154
 
 the document, it seems to me impossible to say that it was not communicated as an offer, and in terms which entitled the plaintiff to treat it as an offer. . . .”
 

 In
 
 Budgett v. Stratford Cooperative and Industrial Society (Limited),
 
 32 Times Law Reports 378, a similar result was reached. There the offer was of half wages to married men who joined the Army. Plaintiff volunteered. Mr. Justice Bkay held that the fact that plaintiff had joined the Army was consideration for the promise made by the defendants, and entered judgment for the plaintiff.
 

 The remaining three questions are answered in the following excerpts from the opinion of President Judge Rowley, which we adopt:
 

 “ ‘If the statement was made, did William Feinberg have the authority to bind the Coca Cola Bottling Company, a corporation?’ . . .
 

 “The control of the business of a private corporation is vested in its board of directors. There were three directors of the defendant corporation, William Feinberg, Myer Ackerman, and his father Samuel Ackerman.
 

 “Director Feinberg testified that he authorized the publication which stated that announcement of the proposal had been made to the employees that day. Director Myer Ackerman testified that he knew of the published announcement on the day it appeared. Upon direct examination, Myer Ackerman was asked
 

 “ ‘Q. Did the directors take any action, approving the payment, making up the difference between what employees of your company would receive, if they were drafted, and what they would have received if they had remained in your employ?
 

 “ ‘A. It was not discussed until after we saw it in the paper.
 

 “ ‘Q. Did you have anything to do with putting in the paper that particular article?
 

 
 *155
 
 “ ‘A. I didn’t object to it.’
 

 “It therefore appears that the directors of the corporation did discuss the proposal; that director Feinberg authorized the proposal, and director Myer Ackerman acquiesced in it.
 

 “Feinberg, secretary and director, Myer Ackerman, vice-president and director, Arnold Hyman, assistant manager, and all the employees, Mickshaw, Zoldan, Bossi and Gray, knew of the published proposal on or about the date of its appearance. It would not be a violent assumption to infer that the third director, Samuel Ackerman, then president of the company, also knew of it. However that may be, Feinberg and Myer Ackerman constituted a majority of the board and we think that their conduct was a sufficient ratification of the proposal.
 

 “It would be grossly unjust to require a claimant against a corporation to prove his case by formal corporate records. It is well known that corporations which include few stockholders do not often act with as much formality as larger companies. This is especially so where the members of the board, actually and directly, personally conduct the business. . . .
 

 “Plaintiff’s suit is based upon an oral proposal alleged to have been made to him by Feinberg. The substance of the proposal was embodied in the newspaper item published at the direction of Feinberg. This publication was, tacitly at least, approved by Myer Ackerman. There was no disavowal by Samuel Ackerman, the third director, or by the corporation, of Feinberg’s authority to make the published proposal. If the circumstances warranted the inference that the corporation, by previous authorization, or by subsequent ratification, or by acquiescence with knowledge of the facts, approved Feinberg’s published offer, we think it may be assumed that he could bind his company by an oral proposal of substantially the same terms to the same persons.
 

 
 *156
 
 “It was undisputed that the proposal was published, that the publication was directed by Feinberg; that Myer Ackerman approved it; and that Samuel Ackerman did not disavow it; that no officer of the company liad disavowed it to the date of trial. . . .
 

 “It seems to us that the trial revolved about two points: first whether Feinberg could bind the corporation without a resolution of the board of directors, and second, whether Feinberg made the proposal as claimed by plaintiff. The first question was answered by the Court, the second by the jury. . . .
 

 “ ‘3. Was there a definite amount proved to be due under the alleged agreement?’ . . .
 

 “Defendant’s records indicated that for the ten months in 1942, prior to his entry into military service, plaintiff was earning an average of $151.00 per month. His military service continued for 37 months. If he had continued in defendant’s employ at the current compensation he would have received approximately $5587.00 for that period of 37 months. As a serviceman he personally received $50.00 per month for three months, $54.00 per month for twelve months, $66.00 per month for twenty-two months, a total of $2250.00. The government paid to his wife $22.00 per month for thirty-seven months, a total of $814.00. (While the wife actually received $50.00 per month, $28.00 of the amount was deducted from the serviceman’s pay.) The government also made an allowance for plaintiff’s child over a period of. thirty-one months. During part of the period this allowance was $16.00 or $18.00 per month, and for the balance of the period it was $30.00 per month. Inasmuch as plaintiff was not able to state for what period the larger amount was allowed, the jury would have been warranted in computing the allowance at the higher rate for the whole period. This would amount to $930.00. There were, therefore, compensation to plaintiff personally $2250.00; an allowance to the wife $814.00, and
 
 *157
 
 allotment of $930.00 for the child an aggregate of $3994.00. The difference between this amount and plaintiff’s probable wages of $5587.00 is $1593.00. This difference exceeds the verdict by more than five hundred dollars.
 

 “The earnings of plaintiff as an employee of defendant were shown by the defendant’s own records. The rate of military pay and allowances were generally known, and the information ivas readily obtainable by anyone.
 

 “The only uncertainty we discover is the assumption that plaintiff would have continued in the employment of defendant at approximately the same wages if he had not entered the military service. The law permits this assumption ex necessitate. Continued employment, continued wages, even continued life involves the element of uncertainty. . . .
 

 “In the instant case there was sufficient data to permit the computation with reasonable certainty. . . .
 

 “ £4. Does the fact that there was a major change in the law concerning conscription between October 1,1940 and October 19, 1942, affect the alleged contract?’ . . .
 

 “We think it cannot be said that the Selective Service Act, as in force in 1940, limited the period of service to a term of twelve months. The Act itself carried notice that the term was tentative only and would be extended if and when the President and Congress decided to extend it. If the first Act had provided for a definite term, when a later statute altered the provisions of the earlier law one might justly complain that he was not bound by a provision not contained in the law in existence when the contract was made. However, that is not the instant situation. In our opinion, the Selective Service Act provided for a term of twelve months service and for such additional period as Congress and the President should order.
 

 
 *158
 
 . “It is scarcely necessary to add that defendant had the right to withdraw its proposal at any time prior, to plaintiff’s acceptance, either because the period of service had been formally extended or for any other reason it deemed sufficient.”
 

 Judgment affirmed.