Powell *v.* Wandel, Appellant.

58

Argued September 11, 1958. Before Rhodes, P. J., Hirt, Gunther, Wright, Woodside, Ervin, and Watkins, JJ.

*Joseph F. McVeigh,* with him *Joseph C. Mansfield,* and *Myers, McVeigh & Mansfield,* for appellant.

*W. Edward Greenwood,* with him *Thomas C. Gawthrop,* and *Gawthrop & Greenwood,* for appellee.

OPINION BY ERVIN, J., November 14, 1958:

In this action of assumpsit the plaintiff, as liquidator of a law firm, sought an accounting from the defendant. At the conclusion of a trial before a judge and jury, a verdict was rendered for the plaintiff. The court below, after refusal of the defendant's motion for judgment n.o.v., directed the prothonotary to enter judgment on the verdict and then further decreed that the defendant account to the plaintiff. From this decree the defendant appealed under the provisions of the Act of June 24, 1895, P. L. 243, as amended, 12 PS §1104, which permits an appeal to this Court upon the preliminary question of defendant's liability to account.

In his argument before the court below, counsel for defendant stated the questions to be as follows:

1. Was the agreement entered into by Humbert B. Powell, Sr., Humbert B. Powell, Jr., and J. Willison Smith with the defendant on December 1, 1949 a valid contract?

2. Assuming the agreement to be valid, is there any evidence to support the jury's verdict, finding that plaintiff is entitled to an accounting?

At the trial testimony was presented by the plaintiff but the defendant offered no testimony.

Defendant had become a client of the law firm of Powell and Smith in April 1947. The plaintiff firm performed certain legal services for the defendant prior to December 1, 1949, when a written agreement, prepared by Powell, Sr., was executed by all of the members of the law firm and the defendant. The agreement is as follows: "THIS AGREEMENT made this 1st day of December, A.D., 1949, by and between KURT WANDEL of Downingtown, Pennsylvania, hereinafter called, 'Wandel', party of the first part and HUMBERT B. POWELL, J. WILLISON SMITH, JR. and HUMBERT B. POWELL, JR., co-partners, trading as POWELL & SMITH, hereinafter called 'Powell', party of the second part.

"WHEREAS, Wandel has from time to time invented, created and/or discovered certain ideas relating to equipment, processes and/or designs and improvements and modifications thereof useful in the manufacture of paper and for other purposes the same being hereinafter sometimes referred to as 'inventions', and

"WHEREAS, Wandel has or may in the future have in mind other 'inventions' some of which may be patentable, some of which may be employed as secret 'inventions', and

"WHEREAS, Wandel has for a considerable period of time been receiving from Powell, legal services in connection with such matters without fee or charge therefor, and

"WHEREAS, Wandel has an agreement with the Rice-Barton Research Corporation of Worcester, Massachusetts, dated January 10, 1949, which agreement was drafted by and with the advice of Powell, and

"WHEREAS, Wandel desires that Humbert B. Powell, and in the event of his inability to act, the firm of Powell and Smith to continue to represent and act for

him in all his matters connected with or relating to 'inventions', as aforesaid of any character for a period of Ten years from the date hereof, and

"WHEREAS, Powell has agreed to act for Wandel in all legal matters pertaining to 'inventions', which Wandel may conceive during a period ending Ten years from the date of this agreement and to accept compensation for such services on a contingent basis as hereinafter set forth.

"NOW THEREFORE, THIS AGREEMENT WITNESSETH, That the parties hereto, for and in consideration of the premises and of the mutual covenants and agreements herein contained, and of other good and valuable considerations between them moving, the receipt whereof is hereby acknowledged, and intending to be legally bound hereby, agree to and with each other as follows:

"1. Wandel does hereby employ Powell to represent him as his sole and exclusive attorney in all legal matters in any way related to or pertaining to 'inventions' as hereinbefore defined for a period terminated Ten years from the date of this agreement.

"2. Powell agrees to represent Wandel in all his legal matters having to do with 'inventions' as hereinbefore defined excepting, however, those activities which are the function of patent counsel.

"3. Said Wandel shall pay to the said Powell Twenty per cent (20%) of all royalties also other income and profits received by him during the said Ten year period from any 'inventions' or patents the said Wandel may be interested in, or which have been made by him, or may hereafter be made by him, and whether the same be conceived prior to the date of this agreement or not excepting payments from Rice-Barton Research Corporation which may be due under said agree-

ment with it up to January 10th, 1950, and shall pay all out-of-pocket expenses of said Powell.

"4. If for any reason said Humbert B. Powell is unable to carry out this agreement for the Ten Year period the said firm of Powell and Smith shall act in his place and stead.

"5. Upon the termination of this agreement the said Powell shall continue to be paid the said Twenty per cent (20%) as to all transactions which have been initiated during the term of this agreement.

"6. This agreement shall be binding upon the parties hereto, their heirs, executors, administrators and assigns.

"IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals the day and year first aforesaid.

(s) KURT WANDEL        (Seal)
    Kurt Wandel
(s) HUMBERT B. POWELL    (Seal)
    Humbert B. Powell
(s) J. WILLISON SMITH, JR.  (Seal)
    J. Willison Smith, Jr.
(s) HUMBERT B. POWELL, JR. (Seal)
    Humbert B. Powell, Jr."

Signed, Sealed and Delivered
    in the presence of:

The testimony also shows that the plaintiff firm continued to represent the defendant in various legal matters down to March 26, 1952, when the defendant notified the plaintiff firm that their services were no longer required and that the legal representation was terminated.

The first question having to do with the validity of the contract was fully submitted to the jury in a charge

which the appellant admits was free from error. The court's charge was in accord with the law set forth in *McCown et al. v. Fraser et al.*, 327 Pa. 561, 192 A. 674. The theory upon which the case was tried in the court below was that there was a confidential relationship existing as a matter of law between the plaintiffs, lawyers, and the defendant, client. In this connection see *Lebovitz et al. v. Perfect B. & L. Assn.*, 56 Pa. D. & C. 589, and cases therein cited. The appellant, however, argues that the plaintiff failed to meet the burden of proof imposed upon him under the law as stated in the above cases. The facts and inferences therefrom, considered most favorably to the plaintiff, the verdict winner, would permit the jury to find that there was no undue influence, imposition or deception practiced by the lawyer upon his client. This is not a case, as was *McCown et al. v. Frazer et al.*, supra, where a young man practiced his wiles upon an old lady. The jury could have found that the defendant in the present case was an intelligent businessman and that he needed legal representation in numerous matters and that his financial position was such that he was not in a position to pay cash in advance for such services. The agreement which he signed stated that he had for a considerable period of time been receiving from the plaintiff firm legal services without fee or charge therefor. They could also have found that no agreement or arrangement had been made relative to fees prior to the written agreement of December 1, 1949. Certainly the defendant could not have expected to engage a law firm to represent him for 10 years in all of his legal matters without making some arrangement to pay therefor. There is no denial by him that these legal services had been and were being supplied by the plaintiff firm. We agree with the learned court below in its conclusion "that the validity of the contract

was properly submitted to the jury as a question of fact and that the fact has been found against the defendant." We are also convinced, after a review of the record, that there was sufficient evidence to submit this question to the jury. The jury by its verdict having so found and the court below having affirmed the finding, the same should not now be set aside: *Carlson et al. v. A. & P. Corrugated Box Corp.*, 364 Pa. 216, 221, 72 A. 2d 290.

While the question has not been heretofore raised in this case, we have some doubt that the principles of law governing fiduciary relations apply to the present situation. In 6 C.J., Attorney and Client, §212, it is stated: "Neither does the rule apply to mere contracts of retainer whereby the relation is established, and the compensation of the attorney fixed. The rule is applicable only to that class of cases where the attorney, by virtue of the relationship, has acquired from his client conveyances, property, securities, etc., and not to an action to recover pay for his services, or where the only question is one of the construction of the contract." See cases cited in the footnotes.

The defendant was an inventor and a man who must have been above the average in intelligence. He was not weakened in mind or body. Both parties were dealing at arm's length and were capable of taking care of their own interests. This contract was looking to the future for a long period of time, to wit: ten years. It was not merely addressed to services in matters already begun but also to services to be rendered in new matters arising in the future.

It is also argued by appellant that there was no consideration to support the written agreement because the plaintiff and his firm were already committed to the representation of the defendant in two matters. While it is the law that where an attorney

has entered into an obligation to perform services for a client in connection with a particular transaction he may not in the midst of the same take an unfair advantage of the client and coerce him into a supplemental agreement increasing the compensation for services which he is already bound to perform under the preceding agreement: *Quarture v. Allegheny Co. et al.*, 141 Pa. Superior Ct. 356, 14 A. 2d 575; *Esakovich v. Groudine*, 141 Pa. Superior Ct. 365, 14 A. 850, this principle of law does not prohibit an attorney from entering into an agreement with a client for fees to cover new or additional items of work. It would be ridiculous to expect an attorney to be obliged to represent a client in all of his legal matters for 10 years for the compensation due him on two prior matters.

"Employment in one suit does not deprive an attorney, while it is pending, of the right to make a contract for compensation for services in another, or for any other professional business with the same client." 7 C.J.S., Attorney and Client, §181, at page 1054.

In connection with the second question above stated, the defendant contends: "(a) There is no evidence that the defendant conceived 'any inventions subsequent to the date of the agreement'.

"(b) There is no evidence that plaintiff or any member of his firm performed any services for the defendant relating to inventions conceived subsequent to the date of the agreement."

This contention is predicated upon the theory that the plaintiff is entitled to a verdict only for services which were rendered relating to inventions conceived subsequent to the date of the agreement. We agree with the learned court below that "such a contention is untenable." The written contract covers services performed subsequent to the date of the agreement in relation to "inventions"—ideas conceived—prior to the

date of the agreement. It also provides that the plaintiff firm has agreed to act in all matters pertaining to inventions which the defendant may conceive during a period ending ten years from the date of the agreement. By the terms of the agreement the defendant agreed to employ the plaintiff in all legal matters having to do with inventions which the defendant "may be interested in, or which have been made by him, or may hereafter be made by him, and whether the same be conceived prior to the date of this agreement or not. . . ." Considering the evidence in the light most favorable to the plaintiff, the jury could have found that services were rendered under the terms of this contract subsequent to the date thereof in both the Lukens matter and the Rice-Barton matter. In our opinion the plaintiff was entitled to an accounting.

Decree affirmed.