478 A.2d 472

**DUQUESNE LIGHT COMPANY,**

v.

**Ronald A. RIPPEL, Appellant.**

**DUQUESNE LIGHT COMPANY,**

v.

**Thomas HARTER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1983.

Filed June 22, 1984.

Petition for Allowance of Appeal Denied Nov. 12, 1984.

Lee R. Golden, Pittsburgh, for appellants.

David R. Cashman, Pittsburgh, for appellee.

Before ROWLEY, WIEAND and HESTER, JJ.

WIEAND, Judge:

On December 23, 1978, a vehicle driven by Thomas Harter negligently collided with and sheared off a utility pole owned by Duquesne Light Co. On February 4, 1979, Ronald A. Rippel's truck also struck and demolished a pole which was owned and used by Duquesne Light Co. to support a street light, a transformer and transmission lines. On both occasions, the utility company was compelled to dispatch repair crews to the sites of the accidents to replace the poles and make repairs to its system for distributing electric power. Harter and Rippel were sued in separate actions. They admitted liability but contested Duquesne Light Co.'s computation of repair costs. Non-jury trials

resulted in findings against Harter for $937.09 and against Rippel for $3,980.85.[1] Appeals to this Court requested review of the trial court's assessments of damages. Having done so, we affirm.

Appellee itemized damages in the Harter case as follows:

| | |
|---|---|
| Labor | $649.69 |
| Drayage | 502.10 |
| Materials | 50.58 |
| Pension | 51.97 |
| Petty cash (i.e., meals) | 22.75 |
| TOTAL | $937.09 |

In the Rippel case, damages were itemized as follows:

| | |
|---|---|
| Labor | $2,616.49 |
| Material | 503.83 |
| Drayage | 563.46 |
| Pension | 209.32 |
| Petty cash | 90.75 |
| TOTAL | $3,980.85 [2] |

Damages must be proved by a fair preponderance of the evidence. *Wright v. Buckeye Coal Co.,* 290 Pa.Super. 231, 238, 434 A.2d 728, 731–732 (1981). "Where there is a basis in the evidence for a reasonable computation of the damages suffered considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it." *Golomb v. Korus,* 261 Pa.Super. 344, 348–349, 396 A.2d 430, 432 (1978), quoting *Myer Feinstein Co. v. DeVincent,* 151 Pa.Super. 254, 258, 30 A.2d 221, 223 (1943). Where injury to property is reparable, the measure of damages is the cost of repairs necessary to restore the property to its former condition. *Wade v. S.J. Groves & Sons Co.,* 283 Pa.Super. 464, 483,

1. Damages for delay were added. They have not been contested in this appeal.

2. This computation included $12.17 which represented the cost of services provided by a "troubleman" who for one hour was removed from his regular duties of answering customer complaints to respond to the emergency caused by the damage to appellee's distribution system. There is no merit in the contention of appellant-Rippel that this charge was improper because the expense would have been incurred even in the absence of damage to the pole.

424 A.2d 902, 911 (1981). This is the measure of damages generally followed in cases where injury has been caused to property of a utility. See: *Pennsylvania Power and Light Co. v. Decker,* 31 Leh.L.J. 502, *aff'd,* 208 Pa.Super. 770, 223 A.2d 126 (1966).

 In determining the actual cost of repairing a utility pole, overhead expenses may properly be included. See: 25 C.J.S. *Damages* § 91(1) (1966); *Pennsylvania Electric Co. v. Taube,* 10 Pa.D. & C.3d 744 (1978). An electric utility company is required to provide a continuous supply of electricity to its customers. Therefore, damaged poles must be promptly replaced and transmission lines repaired. If the utility were to employ an independent contractor to replace damaged poles, the contractor would most certainly consider and include overhead costs in determining the amount to be charged for his work. In that event, a person called upon to reimburse the utility for damages caused by his or her negligence would not be heard to complain that the utility's damages included an amount to reimburse the contractor for overhead. Overhead expenses incurred by a utility company which makes its own repairs are as much the natural and proximate result of a wrongful act as if such costs had been passed along to the utility by an independent contractor. See: *Younger v. Appalachian Power Co.,* 214 Va. 662, 664, 202 S.E.2d 866, 868 (1974); *Ohio Power Co. v. Johnston,* 18 Ohio Misc. 55, 247 N.E.2d 338 (1968).

 The utility's charge for drayage, it was testified, represented the costs of operating and maintaining those vehicles of the utility which had been used in effecting the repairs made necessary by appellant's wrongful conduct. Drayage was computed by allocating to each function, according to the time involved and the number and type of vehicles used, a portion of the utility's operating and maintenance costs for all vehicles used in the utility's business, including labor, depreciation, gasoline, tires, repairs, parts, insurance and overhead related to vehicle maintenance. Drayage charges were reviewed and redetermined monthly

by the utility. The allocation of total operating and maintenance costs to individual functions, it was testified, was done according to established accounting principles accepted by the Public Utilities Commission.

This practice is no more inexact than an estimate of vehicular expense based upon a job-specific analysis. We agree with and adopt the holding of a Connecticut court in *Hartford Electric Light Co. v. Beard,* 3 Conn.Cir.Ct. 323, 213 A.2d 536 (1965) as follows:

[I]f the plaintiff is able to prove with reasonable certainty indirect overhead costs of repairs and that these indirect costs have been correctly ascertained in accordance with sound accounting principles, then these indirect costs are a proper element of damages, and the plaintiff may recover them.

*Id.* at 324, 213 A.2d at 537. See also: *Public Service Electric & Gas Co. v. Stone,* 184 N.J.Super. 504, 446 A.2d 578 (1982).

The judgments are affirmed.