492 A.2d 405

**Ray A. LOKAY**

v.

**LEHIGH VALLEY COOPERATIVE FARMERS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1984.

Filed April 26, 1985.

92

Oldrich Foucek, III, Allentown, for appellant.

Thomas E. Weaver, Jr., Allentown, for appellee.

Before CAVANAUGH, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

Lehigh Valley Cooperative Farmers, Inc. (hereafter "Lehigh"), appeals an order of the Court of Common Pleas of Lehigh County dismissing its exceptions and denying its motions for judgment notwithstanding the verdict or, in the alternative, for a new trial. We affirm.

■ While motions for judgment n.o.v. and for a new trial are usually combined as alternative motions, we must review rulings on them under different standards. Judgment n.o.v. is proper only in a clear case; in reviewing its denial, we examine the evidence in the light most favorable to the verdict-winner, including all reasonable inferences arising from the evidence, and we resolve any conflicts in the evidence in favor of the verdict-winner. *Giambra v. Aetna Casualty and Surety Co.*, 315 Pa.Super. 231, 233, 461 A.2d 1256, 1257 (1983); *Mattox v. City of Philadelphia*, 308 Pa.Super. 111, 115, 454 A.2d 46, 48 (1982), quoting *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 351, 414 A.2d 100, 103 (1980); *Schneider v. Albert Einstein Medical Center, Etc.*, 257 Pa.Super. 348, 354–55, 390 A.2d 1271, 1274 (1978). A verdict for the plaintiff, which survived a motion for judgment n.o.v., must stand if there is evidence upon which the jury could find that the defendant was liable. *Karam v. Pennsylvania Power & Light Co.*, 205 Pa.Super. 318, 322, 208 A.2d 876, 878 (1965); *Powell v. Wandel*, 188 Pa.Super. 57, 146 A.2d 61 (1958).

By contrast, the trial court has broad discretion whether to grant a new trial. Its denial demands that we examine all the evidence and decide whether the trial court manifestly or capriciously abused that discretion or made an error of law. *Yandrich v. Radic*, 291 Pa.Super. 75, 79, 435 A.2d 226, 228–29, *appeal dismissed* 499 Pa. 271, 453 A.2d 304 (1982); *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 290, 285 A.2d 451, 456, *cert. denied* 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972); *Calabria v. Brentwood Motor Coach Co.*, 412 Pa. 486, 194 A.2d 918 (1963); *Ferick Excavating and Grading v. Senger Trucking Co.*, 315 Pa.Super. 69, 74, 461 A.2d 800, 802 (1983); *see also Bumbarger v. Kaminsky*, 311 Pa.Super. 177, 457 A.2d 552 (1983).

Appellant Lehigh processes raw milk for sale to retail stores. In the early 1970s, appellant began negotiations with Topco Associates, Inc., an Ohio firm and appellee's

former employer, for appellant's sale of milk products to various retail food chains. As part of these negotiations, appellant sent Topco copies of its financial reports for the fiscal years ending January 31, 1970, and January 31, 1971. Appellee reviewed these two reports as part of his duties as Division Manager for Topco.

Appellant's chief operating officer at that time, Richard Allison, told appellee on three occasions in 1971 that appellee might consider employment with appellant. Early in 1972, Allison and appellee began to negotiate terms for appellee's employment. This involved at least two meetings and several telephone conversations; during one meeting appellee and Allison discussed appellant's financial status. In March, 1972, appellee joined Lehigh as a vice-president.

In July, 1974, appellee was discharged by appellant's new president, Robert Barry. Appellee's dismissal did not result from any fault in his performance; rather, appellant was reducing its management staff because its financial health was not as it had believed. An audit of several of its annual reports, including those for the 1970 and 1971 fiscal years, disclosed numerous errors. Allison was fired upon the discovery of these errors; appellant claims that Allison deliberately misrepresented its finances while he was an officer of it.

Appellee sought but did not obtain new employment similar to his former office at Lehigh. Finally, he found employment as a consultant to a recycling business. He sued appellant for breach of contract and fraudulent misrepresentation, alleging, *inter alia,* that he was induced to resign from Topco and join appellant partly on the basis of appellant's 1970 and 1971 reports, which were discovered to have misstated appellant's economic condition.

The jury found for appellee on both his breach of contract and fraud claims. The court fixed damages at $28,490.48 on the contract count; the jury awarded $162,000.00 compensatory damages on the fraud count.

Appellant's questions before us pertain only to the fraudulent misrepresentation claim; it does not challenge the finding of liability or award of damages for breach of contract. Instead, appellant disputes the jury's interpretation of the facts under the law applicable to fraud. First, appellant asks whether the evidence was sufficient to support the jury's finding of fraudulent misrepresentation. Second, it inquires whether, assuming that the evidence was sufficient, the jury was justified in awarding appellee the stated amount of compensatory damages for fraud.

Pennsylvania law on fraud was thoroughly reviewed in *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243 (1983). In that case, we stated that a determination of fraud normally requires a finding of: 1) a misrepresentation; 2) a fraudulent utterance of it; 3) the maker's intent that the recipient be induced thereby to act; 4) the recipient's justifiable reliance on the misrepresentation; and 5) damage to the recipient proximately caused. *Id.,* 318 Pa.Superior Ct. at 107, 464 A.2d at 1252.

Appellant argues that appellee did not prove the third and fourth elements of his claim. Appellant asserts that it could not intend that appellee rely upon the 1970 and 1971 reports because those documents were meant for perusal only by appellant's shareholders, creditors and the like, not by prospective employees; appellee was thus not a "foreseeable reader" of the reports. In the alternative, appellant argues that, because it had no knowledge of the fabrications in the reports, it could not intend that appellee act upon their misrepresentation of appellant's financial condition.

■ We disagree with those claims. Appellant admits that appellee read the two reports at issue in his capacity as a Topco employee, and that it knew he read them. Therefore, appellant's characterization of appellee as outside the scope of foreseeable recipients of the reports' misrepresentations is meritless.

Likewise, appellant's argument that it was a victim of the same fraud as was appellee, and so cannot be liable to him for it, is meritless. Appellant misreads the grounds underlying its liability to appellee.

A corporation is a creature of legal fiction, and must "act" through its officers, directors or other agents. *Ashley v. Ashley*, 482 Pa. 228, 393 A.2d 637 (1978); *Pollock Industries, Inc. v. General Steel Castings Corp.*, 203 Pa. Super. 453, 201 A.2d 606 (1964) (allocatur denied). In Pennsylvania, a corporate officer's scope of authority to act for the corporation is established by the corporation's by-laws or, in their absence, by resolution of the board of directors. 15 P.S. § 1406. In addition, the active management of a corporation has historically governed employee relationships. *Emperee v. Meyers*, 440 Pa. 430, 269 A.2d 731 (1970). While appellant now alleges Allison's fraud as a defense to its own liability, it does not deny his managerial authority, as chief operating officer, to recruit upper-level employees; we would reject any such denial on two grounds.

First, corporations have long been able to confer express power to hire on one or more officers. *P. Curtis Ko Eune Co. v. Manayunk Yarn Manufacturing Co.*, 260 Pa. 340, 103 A. 720 (1918); Section 1406, *supra*. However, independent of any express grant of power, a corporation is bound by its agent's acts, if those acts were performed within the agent's implied or apparent scope of authority, unless the agent acted for his own benefit without the corporation's ratification of his action. *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880 (3d Cir.1975); *United States v. Hougland Barge Line, Inc.*, 387 F.Supp. 1110 (W.D.Pa. 1974); *Todd v. Skelly*, 384 Pa. 423, 428, 120 A.2d 906, 909 (1956); *Sayre Land Co. v. Borough of Sayre*, 384 Pa. 534, 121 A.2d 579 (1956); *Chestnut Street Trust & Savings Fund Co. v. Record Publishing Co.*, 227 Pa. 235, 75 A. 1067 (1910); *Pollock Industries, supra; Mickshaw v. Coca Cola Bottling Co., Inc., of Sharon, Pennsylvania*, 166 Pa.Super. 148, 70 A.2d 467 (1950); *Hahnemann Hospital v. Golo*

*Slipper Co.,* 135 Pa.Super. 398, 5 A.2d 605 (1939); Annot., 28 A.L.R.2d 929 (1953). "Apparent authority" arises when a corporation permits its agent to assume a certain power or authority, or represents him as having it. *Ervin v. City of Pittsburgh,* 339 Pa. 241, 14 A.2d 297 (1940); *Wood Co. v. McCutcheon,* 136 Pa.Super. 446, 7 A.2d 564 (1939). Here, appellant has neither proven nor even argued that recruiting appellee was outside the express, implied or apparent scope of Allison's authority as chief operating officer, or that, in recruiting appellee, Allison acted for his own benefit without appellant's ratification.

■ Second, even if a corporation can raise the defense that an officer acted—specifically, contracted—outside the scope of his authority, it is estopped from doing so where it has received and enjoyed the benefits of that act or contract. *Emperee v. Meyers, supra; C.L. McClain Fuel Corp., to Use of Wayne Title & Trust Co. v. Lineinger,* 341 Pa. 364, 19 A.2d 478 (1941); *Blumberg v. Broad Street Trust Co.,* 329 Pa. 471, 198 A. 27 (1938); *Marian v. Peoples-Pittsburgh Trust Co.,* 149 Pa.Super. 653, 27 A.2d 549 (1942); *Osborne v. Victor Dairies, Inc.,* 138 Pa.Super. 117, 10 A.2d 129 (1940); *Wood Co. v. McCutcheon, supra.* Appellant received and enjoyed the benefits of its employment contract with appellee without objection for more than two years; it then discharged him because of its own difficulties, not because of any failing in his performance as an officer.

■ The trial court held that the evidence supported a finding of appellant's intent to defraud. Appellant, as a corporation, is an entity separate from its officers, directors and stockholders. *Gottlieb v. Sandia American Corp.,* 452 F.2d 510 (3d Cir.1971), *cert. denied* 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971); *Ashley v. Ashley, supra; In re Erie Drug Co.,* 416 Pa. 41, 204 A.2d 256 (1964); *In re Cunningham's Estate,* 395 Pa. 1, 149 A.2d 72 (1959). However, by itself appellant, a fictional "person," is incapable of tortious conduct. Instead, it is liable to appellee, for Allison's fraud, under the rules of corporate liability for the acts of corporate agents.

Appellant's second contention is that the record does not support the award of $162,000.00 compensatory damages for fraud. Its underlying basis for this assertion is that appellee was awarded damages both for breach of his employment contract with appellant and for appellant's fraud in inducing that contract. Appellant argues in essence that appellee's contract and tort claims concern a single wrong: appellee relied on the misrepresentations in appellant's annual reports when he left Topco and joined appellant, and he was dismissed from appellant when the latter discovered those same misrepresentations. Appellant concludes that because of this, appellee is fully compensated by the award for breach of contract.

█ We cannot agree. Appellee suffered two superficially related but nonetheless distinct injuries: he was fraudulently induced to quit Topco, where he held a high managerial position, resettle himself and his family in a new state and begin work for appellant, and then was fired from appellant in breach of his employment contract with it. Two separate wrongs were inflicted upon him, and our duty now is simply to determine whether the record supports the jury's award for the first one. We conclude that it does.

█ Damages for fraud are limited to what losses were immediately and proximately caused by the fraud. *Crawford v. Pituch,* 368 Pa. 489, 84 A.2d 204 (1951); *Clement Martin, Inc. v. Grissey,* 191 Pa.Super. 464, 157 A.2d 412 (1960). The plaintiff "is entitled to all pecuniary losses which result as a consequence of his reliance on the truth of the [defendant's] representations." *Delahanty, supra,* 318 Pa.Super. at 117, 464 A.2d at 1257. It is equally true that assessment of damages is for the jury:

The determination of damages is a factual question to be decided by the fact-finder. This duty of assessing damages is within the province of the fact-finder and should not be interfered with unless it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence. The fact-finder must assess the worth of the testimony, by weighing the evidence and determining its

credibility, and by accepting or rejecting the estimates of the damages given by the witnesses. In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence. *Delahanty, supra,* 318 Pa.Super. at 117, 464 A.2d at 1257 (citations omitted). *See also Little v. York County Earned Income Tax Bureau,* 333 Pa.Super. 8, 22–23, 481 A.2d 1194, 1202 (1984). Under these principles, an appellate court will not find a verdict excessive unless its amount shocks the court's sense of justice. *Weed v. Kerr,* 416 Pa. 233, 205 A.2d 858 (1965); *Christides v. Little,* 274 Pa.Super. 343, 348, 418 A.2d 438, 440 (1980); *Murphy v. Penn Fruit Co.,* 274 Pa.Super. 427, 418 A.2d 480 (1980); *Robert v. Chodoff,* 259 Pa.Super. 332, 393 A.2d 853 (1978).

The trial court instructed the jury on determining damages for fraudulent misrepresentation, and appellant does not contest those instructions; it disputes instead the result the jury reached by applying them.

 The court, in its opinion dismissing appellant's exceptions and denying its motions for judgment n.o.v. or a new trial, summarized appellee's evidence of what he lost by leaving Topco, including his salary and the value of fringe benefits at the time of his departure and projected increases in that salary. At first, recovery of these losses appears to be recovery of a lost expectation, in violation of the rule that a fraud plaintiff is limited to damages for "actual loss." However, in an employment context lost future income is in fact what the plaintiff loses when he is induced to leave an otherwise on-going position; this is not the archetypal fraud fact-pattern in which a plaintiff was tricked into buying something for more than it was worth, or selling for less than that. *See, e.g., Glick v. Campagna,* 613 F.2d 31 (3d Cir.1979); *Sands v. Forrest,* 290 Pa.Super. 48, 434 A.2d 122 (1981); *Polaski v. Levin,* 176 Pa.Super. 370, 107 A.2d 876 (1954). Appellee's loss of his salary and benefits from Topco was the injury caused by appellant's fraudulent misrepresentation; his decrease in income following his dismissal from appellant was the damage from

appellant's breach of contract. The trial court hypothesized several methods by which the jury could have decided upon $162,000.00 as compensation for the loss caused by appellant's fraud; the court noted, however, that we cannot know precisely how a jury arrives at a verdict and that its verdict need not be one of mathematical certainty. *See Duquesne Light Co. v. Rippel,* 329 Pa.Super. 289, 478 A.2d 472 (1984). *See also Aiello v. Ed Saxe Real Estate Inc.,* 327 Pa.Super. 429, 476 A.2d 27 (1984); *Princess Hotels International v. Hamilton,* 326 Pa.Super. 226, 473 A.2d 1064 (1984).

After reviewing appellee's evidence, we cannot say that the amount set by the jury shocks our sense of justice or clearly resulted from "partiality, caprice, prejudice, corruption or some other improper influence." This being so, we will not breach our deference to the trier by interfering with its award.

The order of the Court of Common Pleas dismissing appellant's exceptions and denying its motions for judgment n.o.v. or a new trial is affirmed.

Order affirmed.