## Smith v. Bethany

*Edward Paul,* for plaintiff.

*Arthur Thomas Donato Jr.,* for defendant Robert Gordon Bethany.

*Paul R. Bartolacci,* for Gincon Corp.

JEROME, *J.,* July 12, 1988 — On January 10, 1984, Robert Bethany, an employee of Gincon Corporation, operating a pickup truck owned by his employer, struck the rear of plaintiff's Volvo several times before the Volvo left the roadway, mounted an embankment, rolled over and came to rest in the middle of the Schuylkill Expressway in Philadelphia. Plaintiff brought suit against Bethany for negligence and against his employer on a theory of negligent supervision. Following a jury trial on March 14 and 15, 1988, a verdict of $250,000 was entered for plaintiff against both defendants. A petition for delay damages was filed on March 18, 1988.

Defendant Bethany was 20 years old when he was hired by defendant Gincon as an apprentice helper in August 1983, some five months before the subject accident. Bethany had a valid operator's license at the time he was hired but did no driving during the first three months of his employment until he was asked to assume the duties of a driver. Bethany had never driven a pickup truck prior to his employment by Gincon, and he received no training or testing before driving the truck involved in the instant accident which was used to pick up plumbing equipment and sheet metal.

In completing his employment application, Bethany revealed that he had been involved in an intersectional accident in 1983. Bethany failed to reveal that he had been cited for running a red light, some time prior to his application, within the three-year period during which he had been licensed. Bethany was also involved in an accident with his employer's pickup truck in October 1983, which accident he attributed to worn tires. The tires were replaced by the employer and no restrictions were placed on Bethany's operation of Gincon vehicles. Gincon had received "no real complaints" about Bethany's behavior and no complaints regarding his driving ability prior to the January 1984 accident. Following the accident, Bethany was charged with recklessly endangering another, reckless driving and leaving the scene of an accident; Bethany pleaded guilty to recklessly endangering another, 18 Pa.C.S., §2705, which crime constitutes a misdemeanor of the second degree and carries with it a maximum penalty of two years imprisonment and a fine of $5,000.

The case was submitted to the jury on special interrogatories; the jury found that Bethany was operating outside the scope of his employment at the time of the accident but found that his employer, defendant Gincon, was negligent in its supervision of Bethany. On March 23, 1988, defendant Gincon filed a motion requesting the court to grant judgment n.o.v. or, in the alternative, a new trial. The court denied both motions on June 9, 1988, and on June 13, 1988, judgment was entered in favor of plaintiff Donald Smith. A notice of appeal was filed on June 22, 1988, by defendant Gincon.

A trial court should only enter a judgment n.o.v. in those cases where two reasonable persons could fail to agree that the verdict is improper. *Buck v.*

*Scott Township*, 325 Pa. Super. 148, 472 A.2d 691 (1984). The judgment of the trial court should not be substituted for that of the jury unless its finding is beyond justification. *Kanner v. Best Markets Inc.*, 188 Pa. Super. 366, 147 A.2d 172 (1958). Further, all evidence must be reviewed by the trial court in the light most favorable to the verdict winner, including all reasonable inferences arising from the evidence. *Lokay v. Lehigh Valley Co-op*, 342 Pa. Super. 89, 492 A.2d 405 (1985).

Viewing the evidence in such a light, the testimony established that Gincon knew or had reason to know that Bethany had been in two accidents and had received one citation during his short driving history. In spite of that notice and in spite of the fact that Bethany had no prior experience driving a truck and had not been hired as a driver, Bethany was not tested, observed or evaluated by his employer before beginning his truck driving responsibilities. Direct negligence on the part of an employer creating liability for the actions of an employee may be established where an employer has failed to exercise control in a reasonable manner. *Byrd v. Merwin*, 456 Pa. 516, 317 A.2d 280 (1974).

The Pennsylvania appellate courts have many times adopted various provisions of the Restatement of Torts. The instant case involves sections 317 and 390 of the Restatement. Adoption of sections 317 and 390 either expressly or implicitly can be seen in *Pulleyn v. Cavalier Ins. Corp.*, 351 Pa. Super. 347, 505 A.2d 1016 (1986), section 390, and *Dempsey v. Walso Bureau Inc.*, 431 Pa. 562, 246 A.2d 418 (1968), section 317. Section 390 sets forth the applicable standard relating to what has been called "negligent entrustment":

"One who supplies directly or through a third person a chattel for the use of another whom the sup-

plier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them."

Section 390 is a specific application of Restatement of Torts, section 308. Section 308 states:

"It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

No Pennsylvania case appears to be on all fours with the instant action. The Maryland courts have considered a similar set of facts in deciding *Curley v. General Valet Service Inc.*, 270 Md. 248, 311 A.2d 231 (1973). There, plaintiff proceeded on a negligent entrustment theory contending that the driver, a chauffeur, was neither youthful nor inexperienced but that the employer knew or should have known he was an incompetent driver, likely to create an unreasonable risk of bodily harm to others.

Although the Maryland Special Court of Appeals reversed the judgment against General Valet reasoning that the employer had a right to rely on the public policy of the state, which suspends a license and deems a driver unfit only after a fixed number of points have been charged against him, the lower court's judgment was reinstated when the court of appeals found that six of employee's 10 motor vehicle violations were moving violations within five years of the subject accident. Three of the moving violations occurred within 16 months of the acci-

dent and four of the violations involved disregard for signs, signals and traffic devices. *Curley* at 240. Based on employee's "demonstrated propensity" to disregard traffic control devices, the court concluded that the jury had adequate evidence before it to find employer's entrustment negligent.

The court cautioned in so finding that the applicable standard set forth in section 390 of the Restatement separates cases presenting isolated instances of carelessness from those evidencing "reckless acts occurring with such frequency and in such a manner as to put the entrustor on notice of the danger involved." The court of appeals rejected the notion that it is the public policy of the state to deem a driver unfit only when he has accumulated sufficient points to merit suspension of operating privileges. For purposes of applying the doctrine of negligent entrustment, repetitive past negligent conduct which makes reoccurrence foreseeable will justify submitting such evidence to the jury.

Section 317 of the Restatement of Torts governs what has been come to be known as "negligent supervision or control":

"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

"(a) the servant

". . .

"(ii) is using a chattel of the master, and

"(b) the master

"(i) knows or has reason to know that he has the ability to control his servant, and

"(ii) knows or should know of the necessity and opportunity for exercising such control."

*Dempsey, supra,* deals with section 317 and, as in the case at bar, an employee committed intentional acts which were outside the scope of his employment. It was argued that the employer knew or, in the exercise of reasonable care in its selection, should have known of the employee's propensity for actions. These actions were considered as "horseplay." On appeal, the verdict for defendant was upheld based on the fact that defendant's notice of horseplay was different from notice of propensity for violence or harmful intentional acts. Implicit in the *Dempsey* case in the adoption of section 317 even though the employer in that case had not only interviewed the employee but contacted an employment agency, two previous employees, city and state police and the district attorney's office. The record in the instant case reveals no such investigation. Only the fact that the actions of the employee amounted to horseplay and not a propensity to harm prohibited the imposition of liability on the employer.

Thus, an employer may be held responsible for the torts of its employee only where the employer knew or had reason to know of the employee's unfitness, incompetence or dangerous attributes and could have foreseen that such qualities created a risk of harm to other persons. *DiCosala v. Kay,* 91 N.J. 159, 450 A.2d 508 (1982). The *DiCosala* case involved the negligent shooting of an individual by a defendant who mistakenly believed the gun was not loaded. Defendant's employer was sued on the theory of negligent hiring which like the theories of negligent entrustment and negligent supervision requires two findings: (1) that the employer knew or should have known of the employee's incompetence or propensity and, (2) that harm to third persons was foreseeable.

It must not be forgotten that in this case, particularly when the "red flag" appeared, the employer was not left with just the option of hiring. The employer could not have hired or, if hired, then the employer could have discharged. When, either from lack of investigation or having investigated, the employer chooses to hire it may expose itself as here.

Considering the evidence in the light most favorable to plaintiff and considering all the evidence received which supports the verdict, *Northwest Savings Association v. Distler,* 354 Pa. Super. 187, 511 A.2d 824 (1986), the motion for judgment n.o.v. was properly refused. First, by the verdict, the jury found that Gincon failed to supervise or control its employee. Secondly, the jury found that because of the youth and inexperience of the employee and because of the failure of the employer to take steps to test, evaluate or observe that employee before pressing him into driving duties for which he had not been hired and, accordingly, the employer's behavior fell short of reasonable conduct.

Stated in reverse, should we have granted a compulsory non-suit? When deciding whether a compulsory non-suit should be granted, the plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence and all conflicts must be resolved in plaintiff's favor. A compulsory non-suit may be entered only in clear cases where the facts and circumstances lead unerringly to but one conclusion. We think that a non-suit could not have been entered because Gincon knew that it had hired an erratic driver, knew that the driver had driven only passenger vehicles, knew that he was young and inexperienced in driving, knew that it did not hire its employee to drive but to be an apprentice helper, and knew that

it ordered its employee to drive a vehicle which was not a passenger vehicle.

Defendant Gincon contends that the excessive verdict entitles it to a new trial. So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the jury. *Cooley v. Jefferson Bank,* 355 Pa. Super. 1, 512 A.2d 713 (1987). Plaintiff testified that he had never experienced back pain before the accident at age 38 and plaintiff's expert testified that in his opinion plaintiff would never be pain free. Moreover, the jury had before it the plaintiff's testimony as to the anxiety he suffered during repeated striking of his car by the employee and his terror at the eventual forceful removal of his car from the highway to the shoulder whereupon plaintiff's car rolled over and he was trapped in the vehicle and had to exit the car in a scary fashion. Since the instant verdict is supported by the evidence and fails to shock the court's sense of justice and bears a reasonable relationship to the damages proved, Gincon is not entitled to a new trial.

Defendant Gincon's remaining arguments are without merit. Its challege of the propriety of the court's denial of the motion for a nonsuit is not an appealable issue. *Fleck v. Durawood Inc.,* 365 Pa. Super. 123, 519 A.2d 3 (1987). Its challenge with regard to the order of closing arguments rises neither to a denial of due process argument nor to a denial of constitutional rights argument; hence, regulation of the addresses to the jury was a matter entirely within the discretion of the court. Pa.R.C.P. 223(a)(3).

Gincon's claim of prejudice because the court permitted plaintiff's expert to testify as to future restrictions is not borne out by the record. Four fac-

tors are considered in determining whether a witness shall be precluded from testifying: (1) the extent of any prejudice or surprise; (2) the ability of the party to cure the prejudice or surprise; (3) the extent to which the allowance of the testimony disrupted the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the party offering the evidence. *Gill v. McGraw Electric Co.,* 264 Pa. Super. 368, 399 A.2d 1095 (1979).

Since defendant Gincon knew the identity of plaintiff's expert whose deposition had been taken before trial and whose report had been produced before trial, any discrepancy between discovery information and trial information cannot constitute surprise under the circumstances. If the expert testimony at trial differed from the expert testimony during deposition, defendant could easily cure any resultant prejudice or surprise by offering the inconsistent deposition testimony into evidence or by exploring the inconsistency upon cross examination. *Neal by Neal v. Lee,* 365 Pa. Super. 464, 530 A.2d 103 (1987). Further, defendant presented its own expert and was free to refute the testimony of plaintiff's expert. Moreover, a fair reading of the report permitted the testimony as to future restrictions. The admission of testimony by plainiff's expert did not disrupt the trial, nor was there any evidence of bad faith on the part of plaintiff in proffering the testimony.

In *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986), the Supreme Court of Pennsylvania suspended mandatory assessment of delay damages (Pa.R.C.P. 233) without regard to fault. Further, the court stated that in making a decision on delay damages, the trial court should consider the length of time from start to verdict; the parties' respective responsibilities in re-

questing continuances; the parties' compliance with discovery rules and other pertinent factors. That was done in this case. In addition, here plaintiff offered to settle for a much lesser sum than awarded by verdict. However, defendant throughout refused to offer any sum.

In *Craig, supra,* the court expressly stated that it did not overrule the rationale of *Laudenberger v. Port Authority of Allegheny Co.,* 496 Pa. 52, 436 A.2d 147 (1981). We note in the instant case there is no constitutional challenge to Rule 238.

As suggested by *Craig, supra,* we find that Rule 238 is a worthwhile rule. We find that delay damages may still be awarded based upon the factors and procedures enumerated in *Craig, supra.*

In computing delay damages, the court considered the guidelines set forth in *Craig, supra,* the record of the case, the petition and responses thereto for delay damages, the court's familiarity with the management of the case (the instant case was individually assigned early on) and we concluded that 160 days of delay were due to the fault of plaintiff and excluded those days in assessing delay damages of $31,231.44 which should be added to the verdict.

For all the above reasons, we entered an order on June 9, 1988, dismissing defendant Gincon's postverdict motions.