Jonathan J. FELIX

v.

FRATERNAL ORDER OF POLICE, PHILADELPHIA LODGE NO. 5

v.

John Shaw and Michael Borkowski.

John Shaw, Appellant.

Jonathan J. Felix

v.

Fraternal Order of Police, Philadelphia Lodge No. 5

v.

John Shaw and Michael Borkowski.

Fraternal Order of Police, Philadelphia Lodge No. 5, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 16, 2000.
Decided July 17, 2000.
Reargument Denied Sept. 29, 2000.

See also 155 F.R.D. 105.

John K. Weston, Philadelphia, for appellant, John Shaw.

Jennifer Liebman, Philadelphia, for appellant, Fraternal Order of Police Lodge No. 5.

Jeffrey Cooper, Philadelphia, for appellees.

Before SMITH, J., PELLEGRINI, J. (P.), and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented is whether the Court of Common Pleas of Philadelphia County (trial court) erred in holding that the Fraternal Order of Police, Philadelphia Lodge No. 5 (FOP) is liable for the damages caused to Jonathan J. Felix (Felix) in the amount of $121,000.00 and, that the FOP is entitled to indemnification from John Shaw (Shaw) in the amount of $121,000.00. We hold that there is substantial evidence in the record to support the conclusions that Shaw made a misrepresentation to Felix, that Shaw is liable to Felix for Shaw's fraudulent conduct, that the FOP is vicariously liable for the acts of Shaw while he acted in his capacity as president of the FOP, and the FOP is entitled to indemnification from Shaw. Thus, the order of the trial court is affirmed.

The relevant facts of this case are as follows. The FOP is a non-profit labor organization that represents approximately 14,000 active and retired Philadelphia police officers. (Findings of Fact 2 and 3.) Shaw was the duly elected president of the FOP at all times relevant to this action and was responsible for conducting the business of the FOP. (Finding of Fact 5.) On or about November 1, 1991, Shaw signed a contract with Michael J. Borkowski (Borkowski), a licensed insurance agent, that provided that Borkowski's company, MBI Financial Services, Inc. (MBI) was designated as the exclusive agent authorized to sell insurance to FOP members (the MBI–FOP Agreement). (Findings of Fact 26 and 27.)

In or around July of 1992, Felix entered into a Pre–Incorporation and Shareholders Agreement (Felbor Agreement) with Borkowski to form a jointly-owned entity called the Felbor Corporation (Felbor). (Finding of Fact 35.) Pursuant to the Felbor Agreement, Felix's contribution to Felbor was to be $175,000.00 and Borkowski was to assign all of the rights, interest and benefits of MBI in the MBI–FOP Agreement to Felbor. (Findings of Fact 37 and 38.) On July 14, 1992, Felix obtained the FOP's consent to the assignment and received confirmation that there were no defaults known by the FOP in the MBI–FOP Agreement. The consent was signed by Shaw and Daniel J. McCormick, the duly elected Recording Secretary of the FOP. (Finding of Fact 39.) Felix made his initial investment of $122,000.00 in Felbor in reliance on the representation by the FOP that there were no known defaults in the MBI–FOP Agreement. (Finding of Fact 44.) Prior to signing the consent on July 14, 1992, the FOP knew that rent was outstanding and that Borkowski was in default. (Finding of Fact 48.)

The MBI–FOP Agreement, which was assigned to Felbor, was terminated by the FOP by letter dated October 26, 1992. (Finding of Fact 52.) The termination was a result of Borkowski's failure to pay rent to the Fraternal Order of Police Dental, Optical, and Prescription Trust Fund (DOP) for the space Borkowski used in the DOP's offices. (Finding of Fact 53.) The MBI–FOP Agreement was also terminated for failure to pay postage and for failure to pay the solicitation fee of $5.00 per member. (Finding of Fact 57.) All of the defaults on which the termination was based were known to the FOP prior to signing the consent on July 14, 1992. (Finding of Fact 58.)

In or around December 1993, Felix sued Borkowski for fraudulent misrepresentation in connection with the failed Felbor venture and obtained a judgment against Borkowski in the amount of $122,000.00. (Findings of Fact 63 and 65.) Felix has made efforts to try to execute on the judgment which he obtained but collected only $1,000.00. (Finding of Fact 66.)

Felix then filed the present action against the FOP alleging that the FOP intentionally and fraudulently misrepresented facts, which induced Felix to do business with Borkowski. After a bench trial, the trial court held that Shaw is liable to Felix for Shaw's fraudulent conduct with regard to the Felix–Borkowski transaction. (Conclusion of Law 26.) The trial court also held that the FOP is vicariously liable for the acts of Shaw and thus the FOP is liable for the damages caused to Felix in the amount of $121,000.00. (Conclusions of Law 27 and 28.) Finally, the trial court held that the FOP is entitled to indemnification from Shaw in the amount of $121,000.00. (Conclusion of Law 29.) Both the FOP and Shaw filed timely appeals of the trial court's decision with this Court.

On appeal,[1] both the FOP and Shaw argue that there was not sufficient evidence presented at trial to substantiate Felix's claim of intentional and fraudulent misrepresentation. The FOP also argues in the alternative that it should not be held liable for the acts of its former president. Shaw argues in the alternative that he should not be individually liable to Felix. We shall address each issue *seriatim*.

■ The elements necessary to prove an action for fraud are: (1) a misrepresentation; (2) that if the misrepresentation was innocently made related to a matter material to the transaction, or if it was knowingly made, materially is not required; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentations; and (5) damage to the recipient as the proximate result. *Woodward v. Dietrich,* 378 Pa.Super. 111, 548 A.2d 301 (1988); *Glanski v. Ervine,* 269 Pa.Super. 182, 409 A.2d 425 (1979). The FOP and Shaw question the

sufficiency of the evidence for each of the above elements.

The relevant part of the consent which is the subject of this case is the following:

In accordance with Paragraph 12 of the FOP Agreement, the FOP hereby consents to and approves the FOP Assignment by MBI to the Corporation and certifies that as of the date hereof, the FOP Agreement attached hereto as Exhibit "A" is a true, correct and complete copy of the FOP Agreement, is in full force and effect in accordance with its terms and that *there are no defaults known to the FOP by either of the parties thereto.*

(Emphasis added).

This consent was signed by Shaw, as the FOP President, and McCormick, as the FOP Recording Secretary, on July 14, 1992. By letter dated October 26, 1992, again signed by Shaw, the FOP terminated the FOP–MBI Agreement. The relevant language of the termination letter is as follows:

Termination is effective immediately, in accordance with the provisions of Paragraph 10(A) of the agreement by yourself and/or by MBI Financial Services, Inc. These breaches include, inter alia, the failure to pay rent to the FOP and/or its subsidiary organizations, in violation of Paragraph 3(I), 3(J) and 5(C) of the agreement.

■ The first issue on appeal is whether the consent signed by Shaw on behalf of the FOP was a misrepresentation of known facts. The trial court found that the MBI–FOP Agreement was terminated as a result of Borkowski's failure to pay rent to the DOP for the space Borkowski used in the DOP's offices and for MBI's failure to pay postage and the solicitation fee of $5.00 per member. (Findings of Fact 53 and 57.) The trial court also

---

1. This Court's review of an order in a case in which the trial court acted as finder of fact is limited to determining whether the trial court committed an error of law or failed to base its

findings upon substantial evidence. *Pleasant Hills Construction Co., Inc. v. Borough of Rankin,* 707 A.2d 639 (Pa.Cmwlth.1998).

found that these defaults were known to the FOP prior to signing the consent of July 14, 1992. (Finding of Fact 58.) These findings of fact are supported by the testimony of Felix who testified that Shaw admitted to him in a meeting after Felix received the termination letter that the reasons for the termination was the failure to pay the rent, the postage and the solicitation fee. Felix's testimony regarding this matter was, in relevant part, as follows:

Well, initially, [Shaw] explained immediately that there was a lease, which I never knew about, that there was rent payments due which I never knew about.

He told me the existence of the lease. I don't think I saw it that meeting. He told me about the postage that was due that Borkowski did not pay.

He told me— if— under Paragraph 5–b, which was not referred to in the termination letter, but it calls for, you know, M.B.I. in this agreement to pay a fee to the Fraternal Order of Police of five dollars per name actually solicited during that month.

And if Mr. Jenning's calculation is correct, that there are 7,000 active police officers and 10,000 retirees, if he had solicited half that many people, that would have been a total of over $40,000 that was not paid to the Fraternal Order of Police.

He indicated that Mr. Borkowski did not deliver utilization reports, as were required by this agreement.

But it was mostly about the rent, the postage, those expenses— those types of expenses, this five dollar per member per month fee that was very clear in this agreement. That's mostly what it was.

There is also substantial evidence that at least two members of the FOP Executive Board, Anthony LaSalle and Charles Gabrick, were aware of the defaults when the consent was signed, including a letter that was sent to those individuals on April 14, 1992 informing them of the delinquent payments. (Conclusion of Law 5; Plaintiff Ex. 8).

■ The next element in this case is that the misrepresentation must have been material or knowingly made. *Glanski.* The trial court found that the misrepresentation in the consent was both material and knowingly made. (Conclusion of Law 6.) Felix consistently testified that he would not have invested his money in Felbor if the consent was not signed or if he knew that MBI was in default in the MBI–FOP Agreement. Thus, there is substantial support that the misrepresentation was material.

■ The third element to be established is the intention of the FOP to induce Felix to invest his money with MBI. The trial court found that the FOP would benefit from Felix investing in MBI by receiving a $5.00 per month user fee for each name solicited by MBI. (Conclusion of Law 8.) That conclusion is supported by substantial evidence and supports the conclusion that the FOP intended to induce Felix to invest his money in MBI. (Conclusion of Law 7.)

■ The fourth element that must be established is Felix's reliance on the misrepresentation by the FOP must have been justified. The consent was signed on behalf of the FOP by Shaw, as President, and McCormick, as Recording Secretary. The trial court correctly held that individuals invested with those titles have apparent authority to act for the entity which they serve. *Lokay v. Lehigh Valley Cooperative Farmers, Inc.,* 342 Pa.Super. 89, 492 A.2d 405 (1985). There is substantial evidence in the record that Felix relied on the apparent authority of Shaw and McCormick in good faith.

■ The final element that Felix must establish is damage as a proximate result of the misrepresentation. Felix testified that but for the consent, he would not have invested $122,000.00 to form Felbor. The essence of Felbor was to sell insurance to

FOP members. When the FOP terminated the MBI–FOP Agreement, Felbor became obsolete. As a result, Felix lost his $122,000.00 investment and only recovered $1,000.00 from Borkowski. Thus, Felix's damage as a proximate result of the misrepresentation is $121,000.00.

■ Both the FOP and Shaw argue that liability should be placed on the other for the damage caused to Felix. The FOP argues that it should not be liable for the *ultra vires* fraudulent act of Shaw. Shaw argues that the FOP is estopped from claiming indemnification from him because the FOP knew and never questioned his authority to conduct the business of the FOP.

■ The trial court found as fact that the FOP Board of Directors allowed Shaw to run the FOP as he saw fit. (Finding of Fact 23.) The trial court also found that the Board of Directors was aware of Felix's anticipated involvement with the FOP Insurance Department but did not request that the matter be brought to the Executive Committee for approval. (Finding of Fact 34.) Thus, Shaw had at least apparent authority to sign the consent. *See Simon v. H.K. Porter Company*, 407 Pa. 359, 180 A.2d 227 (1962) (apparent authority exists when the principal knowingly permits its agent to exercise particular authority or holds him out as possessing it). An entity's liability is not limited to such acts of its agents as are expressly authorized or necessarily implied, but extents to contracts negotiated by its agent acting within the apparent scope of authority. *Id.*

■ Also, the trial court found that the FOP derived a benefit from the MBI–FOP Agreement of $5.00 per month user fee for each name solicited by MBI. (Conclusion of Law 8.) It is established law in Pennsylvania that an entity will not be permitted to repudiate even unauthorized acts of its officers when the entity has received the benefit from the transaction. *Emperee v. Meyers*, 440 Pa. 430, 269 A.2d 731 (1970); *Osborne v. Victor Dairies, Inc.*, 138 Pa.Super. 117, 10 A.2d 129 (1939). Thus, the trial court did not err by holding the FOP vicariously liable for the acts of Shaw while he acted in his capacity as president of the FOP.

■ Finally, Shaw argues that the trial court erred in holding that the FOP is entitled to indemnification from Shaw. Originally, Felix brought a fraudulent misrepresentation claim against the FOP. The FOP then joined Shaw as an additional defendant. The trial court found that Shaw is liable to Felix for Shaw's fraudulent conduct in relation to the Felix–Borkowski transaction. (Conclusion of Law 26.) The trail court also found that the FOP is vicariously liable for the acts of Shaw while he acted in his capacity as president but was entitled to indemnification from Shaw. (Conclusions of Law 27 and 28.) This was not an error. An officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefore.[2] *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983). Also, although the FOP gave Shaw authority to conduct the business of the FOP, there is no finding that the FOP authorized Shaw to commit fraud. Thus, the FOP is not estopped from seeking indemnification from Shaw.

Accordingly, the order of the trial court is affirmed.

### *O R D E R*

AND NOW, this 17th day of July, 2000, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

---

**2.** We find no merit in Shaw's argument that the commission of intentional fraudulent misrepresentation is nonfeasance and not misfeasance.