# Laird v. The Clearfield & Mahoning RR Co.

C.P. of Clearfield County, no. 98-51-CD.

*Steven P. Chawaga, John Sughrue* and *Tom P. Monteverde,* for plaintiffs.

*Kim C. Kesner,* for defendant Clearfield and Mahoning Railroad.

*Michael A. Finio, Paige MacDonald-Matthes* for defendants Buffalo, Rochester and Pittsburgh Railway, Buffalo and Pittsburgh Railroad and CSX Transportation Inc.

*John T. Pion, Richard S. Dorfzaun* and *John C. Herbert,* for defendant Buffalo and Pittsburgh Railroad.

*Stephen F.J. Martin,* for defendant CSX Transportation Inc.

*John A. Snyder, John W. Blasko* and *Dwight L. Koerber Jr.,* for defendants R.J. Corman Railway Company/ Pennsylvania Lines Inc. and Richard Corman.

*John K. Enright* and *Richard A. Bell,* for defendant Conrail.

*Walter F. Wall,* for defendant David R. Irvin.

REILLY JR., *P.J.,* January 26, 2001—On or about January 13, 1998, the plaintiffs in the instant case filed a class action and derivative complaint in equity against the above-named defendants. Specifically, the derivative action was brought on behalf of The Clearfield & Mahoning Railroad Company against its board of directors. The complaint alleged mismanagement in the operation of C&M by failing to issue any dividend to the minority stockholders as well as by terminating an 1893

lease with the Buffalo, Rochester & Pittsburgh Railway Co. and subsequently executing an amended trackage rights agreement with BR&P's assignees. The complaint also stated other various accusations of general corporate mismanagement.

However, prior to the commencement of this action, no written demand requesting prosecution of these claims or suitable corrective measures was made to the board as required by Pennsylvania law. Only on April 16, 1999, when threatened with a motion to dismiss did the plaintiffs mail a written demand to the C&M asking its president or board of directors to prosecute their claims against majority stockholder Richard J. Corman and any other "interested" members of the board. Following this demand, counsel for C&M requested specification of the allegedly interested members of the board. After a period of informal discovery, the plaintiffs determined that there were no disinterested directors capable of prosecuting the claims set forth in the written demand.

Subsequently, on November 2, 1999, C&M filed a motion for court appointment of a special panel or special committee and a motion for dismissal or stay of the derivative action based on the plaintiffs' failure to exhaust the mandatory intracorporate remedies. Plaintiffs answered the same and following the submission of briefs and argument, the court issued an order dated March 29, 2000, which dismissed C&M's motion for dismissal, and, in the alternative, granted its motion for stay of the action and appointment of a special panel.

Following the court's appointment of the three-member panel, plaintiffs filed a motion for leave to file sec-

ond amended complaint to add David R. Irvin and Moynahan, Irvin & Smith P.S.C. as defendants. The motion also sought the court's permission to depose Mr. Irvin as an attorney with respect to any legal advice, which he gave to the Corman defendants and C&M in connection with the issues complained of by the plaintiffs. In response, proposed additional defendant David Irvin submitted a memorandum of law challenging his addition on the basis of lack of personal jurisdiction of the Pennsylvania courts. Plaintiffs submitted an answer to the aforementioned memorandum of law and the court granted plaintiffs' motion to add Irvin as a defendant and plaintiffs' request to file a second amended complaint. Plaintiffs subsequently admitted Irvin's law firm was an improper defendant therefore the court did not rule on that motion.

Plaintiffs filed their second amended complaint and all defendants timely filed preliminary objections. Initially, it is noted that in reviewing preliminary objections, facts that are well-pleaded, material and relevant will be considered as true, together with such reasonable inferences as may be drawn from such facts. *Mellon Bank N.A. v. Fabinyi,* 437 Pa. Super. 559, 650 A.2d 895. (1994). "When a defendant files preliminary objections in the nature of a demurrer, he necessarily admits as true all of the well-pleaded facts in the complaint, as well as any reasonable inferences to be drawn therefrom." *The 220 Partnership v. Philadelphia Electric Co.,* 437 Pa. Super. 650, 654, 650 A.2d 1094, 1096 (1994). "A court should sustain preliminary objections in the nature of a demurrer only where it appears from the face of the complaint that recovery upon the facts alleged is not permitted as a

matter of law." *Id.* "Any doubt as to the legal sufficiency of the complaint should be resolved in favor of [plaintiffs]." *Id.* With these well-established principles in mind, the court shall consider each of the defendants' preliminary objections to the second amended complaint.

Certain defendants raise the question of this court's jurisdiction to entertain plaintiffs' complaint. This objection was also raised and dismissed in the preliminary objections to the original complaint. In this regard, certain defendants continue to argue that the federal surface transportation board considered defendants' termination of the subject lease and its replacement with a rail trackage agreement and, following review and evaluation, said board granted exemption to the transaction, in effect permitting it to proceed without prior board approval. Based on the STB's granting this exemption, defendants claim the matter is closed and that this court cannot consider plaintiffs' allegations because jurisdiction lies exclusively and/or primarily with the STB. Therefore, claim the defendants, this court must grant their preliminary objections and dismiss plaintiffs' second amended complaint. This court continues to disagree and again notes that plaintiffs have specifically waived their claim for reinstatement of the subject lease and, in that regard, the exemption granted by the STB will not be affected.

Plaintiffs suit is not an action to enjoin, set aside, annul or suspend the order of the STB but an action to recover damages for an alleged breach of the lease agreement and to recover under other theories of law connected therewith. Moreover, the STB ruling herein did not address stockholders' rights under their shares of stock or under the lease agreement and provided no basis for any

exemption with regards to these claims. If plaintiffs are successful in their claims for recovery it will not affect the jurisdiction of the STB because said exclusive jurisdiction does not extend to the type of claims raised by plaintiffs. The STB did not address the merits of the plaintiffs' claim or even consider them. The issues in the present case include whether or not defendants have carried out or attempted to avoid any duties that they had regarding the plaintiffs. These issues do not involve administrative questions in which the STB has particular expertise.

In further support of the objection to jurisdiction, defendants cite to recent federal case law which grants concurrent jurisdiction between the STB and the federal district courts over specific matters, while clarifying that the STB has primary jurisdiction. This court agrees, but continues to hold that this court is not thereby divested of subject matter jurisdiction over the state law claims raised by the plaintiffs. The STB's general jurisdiction is described in 49 U.S.C. §10501 which states, in relevant part:

"(a)(1) Subject to this chapter, the board has jurisdiction over transportation by rail carrier that is—

"(A) only by railroad; or

"(B) . . .

"(b) the jurisdiction of the board over—

"(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

"(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one state, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and pre-empt the remedies provided under federal or state law."

A similar objection was decided in *Kraus v. Santa Fe Southern Pacific Corp.,* 878 F.2d 1193 (Or. 1989), *cert. dismissed,* 110 S.Ct. 1329, 493 U.S. 1051, 107 L.Ed.2d 850 (1989). The complaint in *Kraus* contained an allegation for tortious interference with economic relationships which arose out of an employment contract. Those defendants argued that the Interstate Commerce Act (now the ICCTA) pre-empted the state law claim because it was based on an alleged violation of the merger provision of the ICA. The court clearly stated the contention was wrong because it rested upon the premise that violation of the ICA was an essential element of the tortious interference claim. *Kraus,* 878 F.2d at 1999. Because the alleged violation did not involve a violation of the ICA as an essential element, the Act did not pre-empt the state law. *Id.* Similarly, these claims all arise out of an alleged breach of contract and do not involve a violation of the ICCTA as an essential element. It is maintained by some defendants that the breach of contract claim is merely "artfully pled;" this claim cannot stand. The plaintiffs here recognize that the STB permitted the termination of the lease and the substitution of the trackage rights agreement, and they do not dispute the validity of the STB's actions. The plaintiffs maintain that the termination of

the lease, although permitted, resulted in a breach of the agreement which required defendants to pay plaintiffs guaranteed dividends. Consequently, the state law claim can be maintained as outside the realm of matters exclusively within the jurisdiction of the STB. The objections to jurisdiction are therefore overruled.

In addition to the breach of contract claim, the plaintiffs also brought forth a claim for tortious interference with contract relations. Several defendants demurred to this cause of action based on the lack of third-party interference. "The tort of interference with contract provides that one who intentionally and improperly interferes with the performance of a contract between another and a third person by causing the third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Maier v. Maretti,* 448 Pa. Super. 276, 288, 671 A.2d 701, 707 (1995). "Essential to recovery on the theory of tortious interference with contract is the existence of three parties; a tort-feasor who intentionally interferes with a contract between the plaintiff and a third person. . . . As a result there must be a contractual relationship between the plaintiff and a party other than the defendant." *Id.* Here, the plaintiffs argue that they and the proposed class are the first party, and that the defendants "Corman, Pennsylvania Lines, C&M as controlled by Corman, David R. Irvin, and possibly one or more of the other defendants" tortiously interfered with the plaintiffs' and the class' contractual rights to receive payments under the 1893 lease. Plaintiffs have overlooked case law which holds a corporation acts only through its agents and of-

ficers, and such agents or officers cannot be regarded as third parties when they are acting in their official capacity. "It is well-established that managerial employees acting within the scope of their employment are not third persons for purposes of satisfying the elements required to maintain an action for interference with contractual relations." *Adams v. USAir Inc.,* 438 Pa. Super. 190, 193, 652 A.2d 329, 330 (1994). In the instant case the alleged breach occurred when the 1893 lease was substituted with the trackage rights agreement which caused the C&M stock certificates guaranteed dividend payment to cease existence. Plaintiffs allege the breach arose when Corman, as the sole owner of the then current lessee, Pennsylvania Lines, and as the president and controlling shareholder and operator of the C&M caused or assisted in causing the 1893 lease to be terminated. A corporation is a creature of legal fiction which can "act" only through its officers, directors and other agents. *Lokay v. Lehigh Valley Cooperative Farmers Inc.,* 342 Pa. Super. 89, 97, 492 A.2d 405, 408 (1985). Acts of a corporate agent which are performed within the scope of his or her authority are binding upon the corporate principal. *Daniel Adams Associates Inc. v. Rimbach Publishing Inc.,* 360 Pa. Super. 72, 79-80, 519 A.2d 997, 1000 (1987). Here, Corman, an officer of the corporation acted on behalf of the lessee corporation and cannot be said to be a third party. The plaintiffs have failed to allege the required element of interference by a third person not a party to the contract and the demurrer shall be sustained.

Plaintiffs' third count, "conspiracy to unlawfully injure and/or defraud" similarly garnered several objec-

tions in the form of a demurrer and/or a request for a more specific pleading regarding the alleged fraud. To adequately plead fraud, a plaintiff must show: "(1) a misrepresentation; (2) that if the misrepresentation was innocently made related to a matter material to the transaction, or if it was knowingly made, materially is not required; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentations; and (5) damage to the recipient as the proximate result." *Felix v. Fraternal Order of Police, Philadelphia Lodge No. 5,* 759 A.2d 34, 37 (Pa. Commw. 2000). Furthermore, allegations of fraud require pleading with particularity. Pa.R.C.P. Rule 1019(b). As our Supreme Court has stated: "While it is impossible to establish precise standards as to the degree of particularity required in a given situation, two conditions must always be met. The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge." *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 380, 224 A.2d 174, 179 (1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967).

In this matter, certain defendants maintain that the requisite elements of justifiable reliance, and a detriment based upon this reliance, are absent. Accepting all of the well-pleaded facts averred in the second amended complaint as true, this court must agree with the defendants on this point. Plaintiffs' only contention resembling justifiable reliance is that certain minority shareholders were

caused to sell a combined total of 529 shares of C&M stock for less than the plaintiffs believe they were worth, consequently devaluing all C&M stocks. Because the plaintiffs do not plead that the minority shareholders sold their shares because they justifiably relied on alleged misrepresentations made by any of the defendants, this objection shall be sustained.

Several objections are also raised in response to plaintiffs' conspiracy claim. "The Pennsylvania Supreme Court set forth the elements of civil conspiracy in *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 211, 412 A.2d 466, 472 (1979): '[I]t must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.' " *GMH Associates Inc. v. Prudential Realty Group,* 752 A.2d 889, 905 (Pa. Super. 2000), citing *Thompson, supra.* "Proof of malice, *i.e.,* an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification." *Id.* "Furthermore, a conspiracy is not actionable until 'some overt act is done in pursuance of the common purpose or design . . . and actual legal damage results.' " *Id.*

To support plaintiffs' conspiracy count, the complaint states, in a very long sentence:

"Certainly Richard J. Corman, Pennsylvania Lines, the C&M as controlled by Corman, and possibly one or more of the other defendants conspired to defraud plaintiffs and other members of the plaintiffs' class by causing the C&M lease to be acquired from Conrail by the newly incorporated and financially unresponsible [sic] Pennsylvania Lines; causing the C&M, Pennsylvania Lines,

and BR&P and CSX to default on their obligations to declare and/or pay or guarantee the payment of dividends on the C&M stock; agreeing to substitute for the 1893 lease the woefully inadequate 1997 trackage rights agreement; deliberately misinforming the minority stockholders of these events in communications which were written, and in oral communications which included some statements which were in fact untrue and which also omitted to state other facts which should have been stated under the circumstances, but were not, and therefore made those statements, too, misleading— all with the express intention of causing minority stockholders of the C&M to sell, and actually convinced the owners of 529 of those shares to sell them to Corman for substantially less than what they were worth, and which actions further reduced the value of the C&M shares still held by the public."

First, the court will sustain Consolidated Rail's demurrer to plaintiffs' "conspiracy to unlawfully injure and/or defraud" allegation as Conrail is not alleged to be a party to the conspiracy. As such, Conrail shall not be required to defend against a bald allegation of conspiracy for which the plaintiffs have not sufficiently set forth.

In regard to the other named defendants, the court also sustains their objections, but on a different basis. Plaintiffs have failed to allege that an agreement to defraud existed among all or even some of the defendants. Instead, plaintiffs baldly state that "Corman, Pennsylvania Lines, the C&M as controlled by Corman, and possibly one or more of the other defendants conspired to defraud plaintiffs . . . . " Plaintiffs have not averred that the named defendants entered into an agreement to conspire. Ab-

sent an agreement between co-conspirators, the claim cannot stand. Further, there are no allegations of malice which is required to support the claim.

The next objection to be discussed is to the derivative action. Pursuant to Pennsylvania law, a special committee was appointed to decide the appropriateness of maintaining this claim. As that committee has not yet responded, this court will refrain from deciding the issue at the present time, but will order the special committee to make a recommendation to the court within 90 days.

The court next considers the plaintiffs' request to certify the class action. In Pennsylvania, class action certification is governed by Pa.R.C.P. no. 1702. This rule requires five prerequisites, which are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and (5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708. Additionally, when certifying a class or refusing to do the same, Pa.R.C.P. no. 1710 requires a court to set forth the reasons for its decision in an opinion on the matters specifically delineated in Rules 1702, 1708 and 1709.

Initially, the number of the class must be determined to be so great that joinder is impracticable. The prospective class is captioned as "the minority shareholders of the Clearfield and Mahoning Railroad Company." Plain-

tiffs maintain that there are at least 60 individuals of whom at least 25 have Pennsylvania addresses. As joinder of that number of persons is sufficiently impracticable, plaintiffs have satisfied the first prerequisite.

Members of the proposed class must have questions of law or fact common to all members. The controversy at hand is whether the defendants breached a contract with the minority shareholders. As minority shareholders, all proposed plaintiffs are in a similar position regarding the contract so that a breach by any or all of the defendants to one would be a breach to all. Determination of this issue would result in resolving questions of law or fact common to all so that the second prerequisite is met.

The representative parties' claims must be typical of the claims of the class. In the instant matter, the representative parties are also minority shareholders who allegedly have not received due dividends and who have suffered a devaluation of their stocks allegedly pursuant to actions taken by some or all of the defendants. The representative's claims are identical to those of the proposed class which satisfies this requirement.

The representative parties are required to fairly and adequately assert and protect the interests of the class under Pa.R.C.P. 1709. The representatives here retained counsel experienced in class action matters; they have stated that no difficulty in maintaining the class action is perceived which would make maintenance of the action difficult; and, there is no indication that the representative parties will have financial difficulty maintaining the action. This prerequisite is satisfied.

Finally, the court must determine whether a class action is a fair and efficient method of adjudication by addressing the factors set forth in Pa.R.C.P. 1708. The representative plaintiffs seek purely monetary damages, thus the court must consider only subsection (a) to Rule 1708. The questions of fact and law which will predominate the action are common to all proposed class members, and, as previously discussed, there are no perceived difficulties anticipated in the management of the class action. Similarly, if each member of the proposed class were to prosecute the action separately, inconsistent results might occur and some proposed plaintiffs allegedly injured by the defendants' action may be prohibited from pursuing the action in any event because of the cost. There are no other pending actions involving the same issues and Pennsylvania is the home state of a substantial portion of the minority shareholders, and the physical assets of the C&M are located in Clearfield and Jefferson counties, Pennsylvania. This forum is appropriate for adjudication of the claims for the entire class. Due to the complexities enveloping this action and the unlikelihood those individual members of the proposed class will pursue this claim on their own, these final criteria are met. Consequently, class certification is deemed appropriate. The objections to class certification are overruled.

Finally, because all claims have been dismissed which could sustain punitive damages, and/or attorneys fees, the objections to such relief are moot.

Wherefore, the court enters the following:

## ORDER

Now, January 26, 2001, in accordance with the foregoing opinion, it is the order of this court that preliminary objections as to jurisdiction and class certification shall be and are hereby denied. Those preliminary objections in the nature of a demurrer to the allegations of tortious interference with contract relations and conspiracy to unlawfully injure and/or defraud and other conspiracy allegations shall be and are hereby granted and those counts in plaintiffs' complaint alleging same dismissed.

It is the further order of this court that defendants above-named shall file responsive pleadings to plaintiffs' complaint within 20 days from date hereof.