

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2004

# Cable & Assoc Ins v. AMS Ser Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3590

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Cable & Assoc Ins v. AMS Ser Inc" (2004). *2004 Decisions.* Paper 628.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/628

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3590

CABLE & ASSOCIATES INSURANCE AGENCY, INC.;
CABLE INSURANCE GROUP OF PENNSYLVANIA, INC.;
PAUL D. CABLE, individually,

Appellants

v.

AMS SERVICES, INC.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil Action No. 01-cv-83)
District Judge: Hon. Terrence F. McVerry

_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
May 13, 2004

Before: NYGAARD, McKEE, and CHERTOFF, Circuit Judges.

(Filed June 2, 2004)

_____

OPINION

_____

McKee, <u>Circuit Judge</u>.

Plaintiffs Paul D. Cable and his company, Cable & Associates Insurance Agency, Inc., argue that the district court erred when it granted summary judgment on their claims of fraudulent representation, breach of contract, and breach of warranty in favor of defendant AMS Services, Inc.[1]  For the reasons that follow, we will affirm.

## I.

Because we write only for the parties, it is not necessary to recite the facts of this case in detail.  It is sufficient to note that the plaintiffs make four arguments on appeal. Cable individually and Cable & Associates argue that the district court erred in granting summary judgment on the fraudulent representation claims they each made, and Cable & Associates also argues that the court should not have granted summary judgment on its breach of contract and breach of implied warranty claims.  We will review each argument in turn.[2]

### A. Cable's fraudulent representation claim

The district court dismissed Cable's claim of fraudulent representation because it found that Cable's alleged damages were not proximately caused by the alleged harm. Cable argues that the district court was incorrect because he became personally liable for

_____

[1] Plaintiff Cable Insurance Group of Pennsylvania, Inc., is not participating in this appeal.

[2] We exercise plenary review over decisions to grant motions for summary judgment. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003).  This means that we exercise de novo review of all legal questions presented to the district court. *Id*.

2

Cable & Associates' losses and suffered other injuries because AMS' software created invoicing and cash flow problems that caused the company's failure.

To make out a claim for fraudulent misrepresentation, a party must prove that the alleged injury was proximately caused by the alleged harm. *Steamfitters Local Union No. 420 Welfare Fund et al. v. Phillip Morris, Inc., et al.*, 171 F.3d 912, 935 (3d Cir. 1999). Proximate cause cannot be established if a party's injury is wholly derivative of a third party's injury. *Id*. at 933, 935. Here, all of Cable's injuries flow from the harm that the alleged misrepresentations caused the business. If the business had not been harmed as a result of the misrepresentations, then Cable would not have been injured.

Cable unsuccessfully analogizes his claim to the claim of fraudulent representation in *Felix v. Fraternal Order of Police*, 759 A.2d 34 (Pa. Commw. Ct. 2000). The *Felix* Court held that the defendants proximately caused the plaintiff's losses after he invested in a corporation that failed in reliance on the defendants' fraudulent statements. *Id*. at 38-39. However, the plaintiff in *Felix* directly incurred losses due to the investment he had himself made based on fraudulent information. Here, Cable alleges that he indirectly incurred losses due to Cable & Associates' decision to contract with AMS. That contract allegedly resulted from fraudulent information and it caused the company's subsequent losses.

**B. Cable & Associates' fraudulent representation claim**

The district court dismissed Cable & Associates's claim of fraudulent

3

representation, holding that the claim was based on representations made by AMS that were not repeated in the parties' contract. The court concluded that the contract's integration clause precluded Cable & Associates' justifiable reliance on representations extrinsic to the contract. Cable & Associates argues that the integration clause appears only in a proposed licensing agreement between the two parties and, although the parties' contract states that it is incorporating the terms of that agreement, the contract could not incorporate terms from a document that never became a contract. We disagree.

On February 19, 1999, Cable & Associates' representatives signed an agreement listing about 14 hardware and software products including AMS' "Agency Management System Software" that specifically included the "Sagitta Browser" software by name. R. at 74-76. The agreement concluded with the following: "The above equipment[3] will be ordered as per the same terms and conditions of your Sagitta License Agreement. []" R. at 76. Cable & Associates had previously agreed to be bound by a document entitled "License Agreement" in September 1997 if a condition was met. R. at 206-08. The parties dispute whether that document ever became a contract. However, there was an integration clause in the 1997 agreement which stated: "This agreement, along with any

---

[3] Cable & Associates also claims that the phrase, "the above equipment" referred only to the hardware and not the software including the Sagitta Browser. Thus, argues Cable & Associates, the integration clause and other terms from the licensing agreement did not apply to the software. Br. at 19. This argument is specious. The term clearly referred to all the items listed immediately above the phrase, about half of which were software items and the Sagitta Browser software was listed.

4

exhibits attached thereto, constitutes the complete agreement between the customers and AMS and supersedes all prior proposals, offers, or representations regarding the software, hardware or services." R. at 206.

We must therefore decide if a proposed agreement can later be incorporated into a valid contract. "The practice of incorporating documents by reference has long been established in Pennsylvania and is defined in Black's Law Dictionary as follows: 'The method of making one document of any kind become a part of another separate document by referring to the former in the latter, and declaring that the former shall be taken and considered as a part of the latter the same as if it were fully set out therein.'"*First Fed. S & L Ass'n v. Street Rd. Shopping Ctr.*, 68 Pa. D & C 751, 754 (1975).[4] Thus, the 1999 contract's clear reference to the earlier licensing agreement and incorporation of all of the agreement's terms is all that is required to import the prior document's terms into the contract. The integration clause does not defeat the incorporation; it is consistent with it.

Cable & Associates also argues that the proposed 1997 licensing agreement could not have been incorporated into the 1999 contract because the agreement was not attached

---

[4] Cable & Associates argues on appeal that Connecticut law should be used to determine whether the agreement could be incorporated because the agreement contains a clause providing that law governs any disputes. Without deciding the issue or whether the company waived its right to make this argument, we conclude that this argument does not impact our analysis. Connecticut law allows incorporation of documents into a contract under the same terms as Pennsylvania law, requiring only that there be "an express provision" in the contract that the document is being incorporated. *See Randolph Constr. Co. v. Kings East Corp.*, 334 A.2d 464, 467 (1973).

5

to the contract as required by *Pa. DOT v. Westmoreland Engineering Co., Inc.*, 487 A.2d 78 (Pa. Commonw. Ct. 1985). However, that case does not require a document to be attached to a contract in order to be incorporated into it. The document had to be attached to the contract in that case because of the specific language in the contract at issue. That language stated that the documents attached to the contract were being incorporated. *Id*. at 83. That is not the case here.

Because the terms of the agreement became terms of the contract when the agreement was incorporated into it, the district court correctly found that the integration clause barred Cable & Associates' claim for fraudulent misrepresentation based on statements that were not included in the contract.

**C. Cable & Associates' breach of contract and breach of warranty claims**

Plaintiff Cable & Associates' final argument is that the district court should not have imposed a one-year time-bar on its breach of contract and breach of warranty claims against AMS. The district court found these claims were time-barred pursuant to the one-year limitations period set forth in the 1999 contract. The 1997 agreement contained a choice of law provision that was incorporated into the 1999 contract.[5] In response, Cable & Associates again argues that the 1997 agreement was not incorporated into the contract.

---

[5] The 1997 agreement's choice of law provision states: "The law of the State of Connecticut shall govern the validity and interpretation of this Agreement and the performance by the parties of their respective duties and obligations under this Agreement." R. at 206.

It also appears to argue that the statute of limitations never started running because it never received all of the contracted-for Sagitta Browser software. Br. at 11-12.

We have already determined that the terms of the 1997 agreement became part of the 1999 contract by incorporation. *See supra* section I.B. Cable & Associates' own complaint disposes of its other argument: it states that AMS began to install the Sagitta Browser on Cable & Associates' hardware on or about June 1, 1999. R. at 35. Even if the software was incomplete or otherwise unsatisfactory delivery of non-conforming goods marks delivery for period of limitations purposes under Connecticut law. *Flagg Energy Devel. Corp. v. General Motors Corp.*, 709 A.2d 1075, 1080-81 (Conn. 1998). Thus, the district court correctly held that the one-year limitations period on these claims began to run on June 1, 1999. It then properly concluded that these claims were time-barred because they were not filed until December 29, 2000; eighteen months after the clock began ticking. R. at 131.

**II.**

For all of the above reasons, we will affirm the district court's judgment.